## Kottler v. Asbestos Shingle, Slate and Sheathing Company.

*Automobiles — Negligence—Contributory negligence—Right-angled collision—Rule of road when two vehicles approach an intersection of two public highways at the same time—Act of June 30, 1919.*

1. Where there is ample evidence to support the finding by the jury either that defendant's automobile had not approached the intersection of two public highways negligently, or that, even if it had done so, the accident was due to the failure of the plaintiff to obey the statutory rule of yielding to the defendant the right of way as required by the Act of June 30, 1919, P. L. 678, a verdict for defendant will be sustained.

2. In an action to recover damages to a motorcycle, equipped with a side-car, it is the duty of the plaintiff to offer the whole machine in evidence if he so desires, and an offer to exhibit in evidence at the trial the side-car referred to in the testimony was properly refused.

3. The Act of June 30, 1919, P. L. 678, in providing that "When two vehicles approach the intersection of two public highways at the same time, the vehicle approaching from the right shall have the right of way," means that where the paths of two approaching vehicles cross at an intersection of two public highways the driver at the left must give way, unless so far in advance of the other as to assure reasonable time to clear the crossing, and thus, in all probability, avoid a collision.

4. The legislature intended, by placing a special duty upon one of the parties approaching an intersection, to prevent, as far as possible, all question between the approaching drivers as to who arrived there first; a driver is forbidden to claim the right of way merely because he may, whether traveling slowly or fast, arrive at the intersection first, and the duty is placed upon him to observe the approach of vehicles on his right, and if, whatever their speed, it appears that they are likely to arrive at the crossing at the same time as his own, he must yield the right of way. This rule eliminates all question as to who first arrived at the intersection and discourages racing for the crossing; it determines who has the right of way before the intersection is reached and before the collision, which it seeks to prevent, is imminent.

Motion for a new trial. C. P. No. 2, Phila. Co., Dec. T., 1922, No. 1608.

*Leo MacFarland,* for plaintiff; *Layton M. Schoch,* for defendant.

GORDON, JR., J., Sept. 1, 1925.—This is a suit for damages for injuries which plaintiff claims he suffered in a collision, which occurred at the intersection of Waverly Road and the Conshohocken State Road, in Montgomery County, between the plaintiff's motorcycle and an automobile belonging to, and operated by an agent of, the defendant.

The jury rendered a verdict for the defendant and the plaintiff moves for a new trial. In support of his motion he assigns nine reasons. The first four are the usual formal reasons, that the verdict was against the law, the evidence, the weight of the evidence and the charge of the court. The fifth reason is merely a reservation of the right to file additional reasons after the filing of the official transcript of the notes of testimony and charge of the court. The sixth reason alleges error in the action of the trial judge in "refusing to allow plaintiff to exhibit in evidence at the trial the side-car referred to in the testimony." The seventh, eighth and ninth reasons assign certain portions of the charge as error.

With respect to the first four reasons assigned for a new trial, we are satisfied with the verdict. The case presented clean-cut issues of fact which were decided by the jury in favor of the defendant, and we see no reason for holding that the verdict was against either the weight of the evidence, the law or the charge of the court. Indeed, it is difficult to see how the jury could have rendered a different verdict under the evidence. The plaintiff, traveling westwardly on the Waverly Road in Montgomery County, was approaching its

intersection with Conshohocken State Road, and the defendant's automobile, traveling southwardly on the latter road, was approaching the same intersection. The ground lying between these two roads, in the angle formed by their lines of approach, sloped downward, so that one on the Waverly Road approaching the intersection could see traffic approaching along the State Road on his right for a distance of some 200 feet north of the intersection. A longer view is prevented by a curve in the State Road. Similarly, one traveling on the State Road within a distance of 200 feet from the intersection could see traffic approaching along the Waverly Road on his left for many hundred feet east of the intersection.

The plaintiff's case was supported by his own testimony alone. His contention was that, due to the recent spreading of oil or tar upon the Waverly Road east of the intersection, he had reduced his speed to approximately six or seven miles an hour, and that he was traveling at this rate of speed when he reached the Conshohocken State Road. He contended that his view of the State Road to his right was obstructed by a Tarvia wagon which was standing on the near side of the State Road, a few feet north of the corner; that as he was crossing the State Road and had reached about to its centre, the defendant's automobile suddenly approached from around a curve in the State Road, some 200 feet north of the intersection, traveling at a very high speed, which he estimated to be from forty-five to fifty miles an hour; that, although he endeavored, by putting on speed himself, to get across the intersection in safety, he was unable to do so because of the speed of the defendant's car, which bore down upon him, struck the side-car of his motorcycle and drove it many feet down the Conshohocken State Road; and that the defendant's car was traveling at such a speed that, after the collision, it ran up and stopped on top of a high bank at the far right-hand corner of the intersection.

The undisputed evidence in the case showed that the plaintiff was not thrown from his motorcycle, which was not overturned or so damaged as to prevent him from riding off on it shortly after the accident, and that he himself gave no immediate evidence of having suffered any serious injury. According to his own testimony, the plaintiff rode off on the motorcycle after the accident, left it at a farmhouse somewhere in the neighborhood and did not see it for some months thereafter. The personal injuries which he claims he suffered in the accident did not develop until the following day.

This is the version of the accident as testified to by the plaintiff. On the other side, the defendant called the driver of its automobile and five apparently disinterested witnesses, persons who, at the time of the accident, were engaged in and around the intersection in the work of spreading tar upon the Waverly Road. The evidence of these witnesses as a whole seriously contradicts the testimony of the plaintiff respecting the relative speeds of the automobile and motorcycle and the manner in which the accident happened. There was ample evidence to support a finding by the jury either that defendant's automobile had not approached the intersection negligently or that, even if it did so, the accident was due to the failure of the plaintiff to obey his statutory duty to yield to the defendant's automobile the right of way which the law gave it under the circumstances, it being upon the plaintiff's right and approaching the corner at substantially the same time.

In addition to the conflicting testimony respecting the manner in which the accident happened, which it was the province of the jury to resolve, we are satisfied, from the standpoint of the credibility of the witnesses, their interest or want of interest in the proceedings, and from the probabilities of their testimony, that the weight of evidence lies clearly with the defendant. We

see no reason, therefore, for disturbing the verdict for any of the first four reasons assigned for the new trial.

The sixth reason upon which a new trial is asked alleges that the trial judge erred "in refusing to allow plaintiff to exhibit in evidence at the trial the side-car referred to in the testimony." The only references to it by counsel appear on pages 3 and 53 of the notes of testimony. On page 3 appears the following:

"Mr. MacFarland: If your Honor please, I have that side-car out here in another room. Would your Honor allow me to have that brought in? The Court: If it becomes necessary, you can, but there is no use of bringing it in now."

And on page 53, in an interruption in the cross-examination, appears the following:

"Mr. MacFarland: If the Court pleases, may I not have that side-car brought in? The Court: Let him go on with the cross-examination."

The sixth reason might be dismissed with the observation that neither of these colloquies amounts to an offer of the side-car in evidence, and, of course, unless offered, it could not have been exhibited to the jury. However, in view of the conflicting testimony of the plaintiff, who, in one part of his evidence, described the condition of the motorcycle as, "it is all bent and twisted and broken, and the motorcycle, as far as it goes, it is an entire loss to me altogether," and in other parts admitted that he had operated it after the accident, and that for some months it had been permitted to be idle on a farm in Montgomery County, coupled with his failure to prove that the entire machine was in the same condition at the time of the trial as it was immediately after the accident, the trial judge would have been compelled to exclude the evidence had it been offered. In addition, the plaintiff did not seek to exhibit the motorcycle to the jury, but only its side-car. It was his duty to exhibit the whole machine or not offer it at all, for its only value as a piece of evidence lay in the nature and extent of all the injuries it received in the accident. The sixth reason for a new trial is, therefore, without merit.

The seventh and eighth reasons assigned certain portions of the charge as error. We have read them with care and see no error in them.

The ninth reason for a new trial relates to that part of the charge in which the trial judge explained to the jury the meaning of that part of the Act of June 30, 1919, P. L. 678, which provides that "when two vehicles approach the intersection of two public highways at the same time, the vehicle approaching from the right shall have the right of way." A careful reading of the entire charge upon this subject satisfies us that it is free from error. The language of the part complained of is as follows:

"There is this special rule of the road, and that rule is that where two cars approach an intersection at the same time, the one approaching from the right has the right of way, and the one approaching from the left must observe and is in duty bound to give the one approaching from the right the right of way, and a failure to do that is negligence. That does not mean that they must be there at the same instant. . . . What the law means is that where, under the circumstances, the cars are traveling at such relative speeds and are coming up to the intersection, so that if they both go on and one does not give way to the other, there would be a probability of a collision if each one is driving (at) the proper speed, then the one approaching from the left must give the right of way. It may be that a car is coming up to an intersection at a very slow rate of speed, and another one is coming up at a faster rate of speed. Therefore, the one at the faster rate of speed may be further away than the

one going at the slower rate of speed. If, however, it is not an excessive rate of speed and is an ordinary rate of speed, so that they would both be deemed (sc. likely), if they went on, to be at the intersection at the same time, and would then be colliding, they would be said in law to be approaching the intersection at the same time. And if that is the situation, the one approaching from the right has the right of way."

The plaintiff objects that this part of the charge errs in permitting the jury to consider the relative rates of speed at which vehicles are traveling, whose paths intersect, and has a tendency thus to place a premium upon speeding. It is difficult, however, to see how such a result would follow from the language used, particularly when it is read in connection with the charge as a whole upon this subject. Immediately following this explanation of the rule relating to vehicles "approaching" an intersection, the trial judge was careful to instruct the jury that the rule applies only when they are approaching at the same time, and that otherwise the one which arrives first at the intersection is entitled to the right of way. This is in accord with the authorities. See Weber v. Greenebaum, 270 Pa. 382, in which Mr. Chief Justice Moschzisker, referring to this part of the Act of 1919, said:

"The evil which the legislature desired to guard against was liability to collisions at crossings. The law already provided a guide where one vehicle arrived at an intersection well in advance of another, which was coming toward it, by giving the first vehicle the right of way: Simon v. Lit, 264 Pa. 121, 123; but it furnished no established rule when two vehicles approached, or drew near to, the intersection 'at the same time,' so that in all probability they would arrive together, and, if one did not give way, a collision would ensue. It was to provide a rule to govern this oft-recurring contingency that the act was passed; and it means simply that, where the paths of two approaching vehicles cross at the intersection of public streets, the driver at the left must give way, unless so far in advance of the other as to afford reasonable time to clear the crossing and thus, in all probability, avoid a collision. . . .

"It must be assumed that the framers of the statute and the legislature used the word 'approach' in a practical sense; so for two vehicles to 'approach' an intersection 'at the same time,' they each, when about to arrive, must be approximately a like distance away from the given point, or this situation must exist at least to such an extent that one, using reasonable judgment, might anticipate their simultaneous arrival, otherwise they would not, in the words of the act, 'approach the intersection . . . at the same time.' "

This is substantially the law as stated to the jury in the charge. The rate of speed at which vehicles approach intersections is one of the controlling factors in determining the likelihood of a collision. Had the legislature intended to confine the rule to instances in which the vehicles actually arrive at an intersection at the same instant, it would have said so in apt and restrictive language. This it has not done, and were we to limit it by definition to such a situation, and exclude considerations of relative speeds, the application of the rule would seldom arise and its salutary value would disappear. The use of the verb "approach" in conjunction with the words "at the same time" clearly indicates the legislative intent to deal with a broader situation, which constantly arises upon our highways, and to provide a rule of the road which would effectively meet most, if not all, the emergencies of a crossing. It is clear that the legislature intended, by placing a special duty upon one of the parties approaching an intersection, to prevent, as far as possible, all disputes between approaching vehicles as to who arrived there first. A driver is for-

bidden to claim the right of way merely because he may, whether traveling slowly or fast, actually arrive at the intersection first, and the duty is placed upon him to observe "the approach" of vehicles on his right, and if, whatever their speed, they appear likely to arrive at the crossing of their paths in the intersection "at the same time," he must yield the right of way. This rule eliminates all questions of who first arrived at the intersection and discourages racing for the crossing. It determines who has the right of way before the intersection is reached and before the collision which it seeks to prevent is imminent. No other interpretation of the act, it seems to us, can have any practical value in eliminating accidents at crossings.

We see no error, therefore, in the instruction to the jury complained of, and, accordingly, the motion for a new trial is overruled.